Our last case today is Sorrell Holdings v. Infinity Headwear & Apparel Case number 22-1964 and I will go ahead and say let's see if this case will be a cinch. I'm going to bring out my inner Judge Laurie. Mr. Parsons, whenever you're ready. Thank you, Your Honor. Good morning and may it please the Court. My name is Gavin Parsons. I'm with the Coats & Bindelwald firm in Cary, North Carolina. And I'm here representing Sorrell Holdings, LLC in an appeal of a trial court's claim construction order and a jury verdict in favor of the defendant for non-infringement. And at last, a sanctions order against plaintiff's counsel over a discovery issue. So those are the issues we're talking about, the three primary issues within that. Mr. Sorrell's invention, which he assigned to Sorrell Holdings, is a, as you said, is a cinch. It performs two functions. In Claim 11, it binds the mesh into a pleated ball and it attaches it to a scrubber. It attaches the scrubber, the pleated ball, to a figurative handle. Two functions. Reviewing the claim language, it is irrelevant whether that cinch touches the user's hands or not. The Court's claim construction order and jury instructions construe Claim 11 to require a negative limitation that the cinch could not contact the user's hand while they were washing. And that's nowhere to be found in the claim language. That was imported in from the specification, right? Yes, Your Honor. Yes, it was imported from the spec. And there were eight or nine other mentions of the word cinch in the specification. And the Court picked out one and limited Claim 11 based on that. Can we talk about the paragraph that the Board relied on from the specification? I think it's at 850. But as I read that paragraph, there are certain statements about the cinch that are called out as just embodiments, certain statements in that paragraph that use the word may. But the crucial sentence that I think was persuasive to the district court doesn't say embodiment and doesn't say may. Instead, it says, you know, additionally, cinch 30 and nozzle 46 do not directly contact the user when bathing with the device. Why is it an erroneous reading of that sentence to think that that is, in fact, a limitation? Again, that is the one. There's nothing by the inventor there that demonstrated any kind of intent that the claim language be limited by that specification. Well, how about the grammar? Why wouldn't a person of skill in the art not read the grammar choices very deliberate? It's embedded in a paragraph that uses embodiment and may and broader language, but that specific sentence doesn't use either of those. I understand, Your Honor, but in all the other mentions of cinch in the specifications, there is no – this is the one time there's any kind of limitation referred to there, and the court picked that one limitation out of a lot of them instead of how the numerous eight or nine other times cinch was used in those specifications. When we import what you call the negative limitation from the specification into the claim, what is the standard for doing that? Does it have to be a disclaimer? What typically, if we were to import a limitation from the claim, even if it doesn't say in this embodiment and such, what sort of standard would we apply? I know we have some case law, for example, that says it has to be clear and unambiguous if it's a disclaimer. What about lexicography? I'm going a little bit outside of what the arguments were. I just was trying to understand in what circumstances would it be appropriate, you think, for the court to take a limitation like in the specification here and actually bring it into the claim? I would point to another example of the embodiments, that even when you have a single embodiment, this court has consistently rejected the idea that if there's something in an embodiment, you don't import that to your claims. And so I would get to it that way. And I think that's probably the way I can move forward with our argument, but the idea that even if you have one embodiment in your patent and there's something in it, you don't import particularly a negative limitation into the claim language from that one embodiment. This court has been very clear over time not doing that. I don't recall. Are there any dependent claims that talk about whether the person's hand can touch the sink? I do not believe so. Okay. If we think one or both of the claim constructions are wrong, your request is that we would then vacate and remand for a new trial on infringement. Is that right? Absolutely, yes. And if we were to do that, would the construction you would have us give to the district court be what you proposed at the claim construction hearing? Yes, Your Honor. So it's in the claim construction briefing to indicate to us. Yes, Your Honor. And, again, in full disclosure, you're free to come up with whatever you feel is appropriate, but we would urge you to adopt our construction. Do you want to address figurative claim? Yes, I would like to address the figurative claim. Generally, there's a principle that intent is not part of patent infringement, and that's not. Sometimes the cases are a little murky, but the idea is it's a pretty solid idea. And the way that it was used in this case by Abel, the Feminist Trial Counsel, was not that it was very clear that he hammered away over and over and over again. In our brief, it's very clear in the record, it's very clear that he told the jury, they didn't specifically intend to design this flush face as a handle, therefore it doesn't infringe, it doesn't meet that second part of the claim. And it's your view that all that's required is that it be capable of being? Capable, suitable, yes. But, again, even if you look at the claim construction and say, well, the court wasn't unreasonable in what they did, how it ended up, how the evidence came in, the arguments that the Defendant's Counsel made in their second and third summary judgment brief, they were driving at intent from day one. And so we won the objective. But then we asked the judge, we said, okay, in the opening and the evidence that's come in and all the argument, he's driving at intent. You know, you've got your construction, you're going to go forward with your construction. At least get an instruction that says this is the pipeline. There's no intent requirement, so we can argue that for the jury. And the judge declined. He said it's not in the pattern of instructions I'm going to give it. So even if you agree with him and say, well, you know what, I don't disagree with him, the way that it came out here was wildly prejudicial to us. The Defendant's Counsel did a great job for his client, but there was definitely intent in the room. Can I just get some confirmation on some answers that you gave to some of my colleagues' questions? So I do see what constructions you proposed in your claim construction briefing below, and that was helpful. But I noticed that you said something slightly different in your brief to us on, for example, cinch. I just want to make sure I know what construction you would say you're proposing is the right one for each of these sort of terms that are in dispute. So let me maybe help you with this. So I saw that you said on page 14 of the blue brief, you have a portion that you're talking about with respect to cinch about a string, elastic band, or metal. And then I was comparing that to appendix page 95, and I saw a slightly different language in the little chart that I was looking at. So I just wanted to make sure I know where you stand on the construction. It may be that the answer is the answer you gave to Judge Stark, and it's what you said on appendix page 95, but then you said something slightly different in the blue brief, so I just wanted clarification. We, and your Honor, candidly, we also have two sets of letters on this matter. And we had my, initially the plaintiff was represented by a lawyer in Texas, and then we came in to claim one out for a pre-examination, and then my partner and I came in and took over the case. So there may be... Understood, but can you just tell me where you stand now? That would be helpful. Yes, and I'm sorry, which appendix page? You said 93? 95 and blue brief 14. That was where I was seeing a slight discrepancy. It's more of a clarification question. I'm not trying to... Yes, your Honor. Could I check? Let me check on that. The only thing I want to add to this is that you can't propose a new construction on appeal. No, I'm just talking about removing. I'm not, I don't believe we intended to propose a new construction. I think we just wanted to remove the language about that the essential contractor can't. You're okay with the district court's construction so long as it doesn't have the negative limitation? Yes, your Honor. Yes, I'm sorry. And I think that's the only thing we were asking for is to remove that out of the construction. Okay, that can clarify it for me. On the sanction point, are you only contesting the grant of the attorney's fees and costs? I'm assuming you didn't have an issue with the continuation of the trial. I'm going to answer your question yes or no, and then I'm going to try to explain. I appreciate that. Yes, but the order that the judge entered at the November 2021 trial setting, it continued the trial. The defendant had asked on Sunday evening, it continued the trial and denied the defendant's motion to dismiss because the defendant moved to dismiss Sunday before the trial saying you've excluded the assignment. That is jurisdictional. You may not go forward. The case is dead in the water. We stood up the next morning and said, your Honor, I completely agree with the defendant's counsel without the assignment. You literally don't have the authority to go forward. It was an error. We are challenging the sanction that was entered against us, the attorney's fees. The order continuing the trial was not problematic. The issue, there is a statement or two in that order that mentions that we produced the assignment, the one-page assignment, three days before trial, and that's factually inaccurate. We produced it, well, it was a month before. It was a mistake. It was my mistake, and I explained that at length. But then we were contesting the imposition of fees. The court left it open as a may. The defendant may file a motion for attorney's fees. They may impose attorney's fees. So we are attacking the sanctions order specifically, but part of that was it was based upon an erroneous finding because there are no findings in the attorney's fee order about prejudice. And there were, and they found in the November order, there's a line in there that says three days. Disclosing this three days before trial is prejudicial. But it's confusing because the district court also says elsewhere repeatedly that he recognizes he produced it 30 days or some of it two weeks ahead. So what happened? Okay. I will try to cut to the short version. Discovery, there were, this case has been pending since 2008. I should be clear. I just assume the district judge just misspoke once or twice in saying it was three days because in various other places it seems that he clearly understood, and it was conceded, I think, that you turned these documents over about 30 days ahead. Yes. I don't know why that was in two places. But we turned it over October 15, a month before trial. It had been in the record. It had been referred to. The issues we were talking about were invalidity and other, and non-infringement. But it was, they had it 30 days in advance. Are you, I mean, I was surprised to see an appeal on an $11,000 question. That doesn't mean you can't appeal it. It doesn't mean you're not right. But I now wonder, are you looking for us to say it was clear error to say that you produced it three days ahead? Is that what this is about? No, it was the imposing the $11,000 sanction. Because the case, there was another case that we relied on. Can I ask you, I'm going to, when you say imposing the $11,000, you mean abuse of discretion. The court didn't have the discretion to do that? Oh, no, no, it had the discretion, yes. So is it the finding of, that it was prejudicial? There was no evidence in the record whatsoever that there was prejudice. What about prejudice caused by delay of trial? Everybody showing up in person and being ready for trial and then happened to delay trial. Is that, what if that, I agree it's a little unclear what the prejudice is that he's referring to in his sentence and his sanctions order. But what if that's the prejudice he was referring to? Your Honor, I don't, as having done something, it's a little difficult to come back and say, you know, there was no, there, I have been in a number of situations where I've had trials. I've had, I've worked weekends, I've skipped family events. Clients have come in, things have been done. Something's been continued for one reason or another. Frequently similar situations where something comes up, sometimes frankly more egregious than this. The case that we cited, the Arkansas case, the judge merely continued the trial. We just asked the judge to continue the letter to impose a lesser sanction or consider lesser sanctions. We didn't specifically, no one specifically said the trial must be continued. That was the, that was the remedy the judge came up with. But the case we cited to him, she just continued the trial. No one got sanctioned. And she granted some re-judgment for him on his letter. I don't view that as a prejudice. What do you think the prejudice was that he was referring to? Do you think it was just three days before trial and, or was it the fact that he felt he had to move, continue trial? I don't know, because I did not consider any of that prejudice. And the defendant, the prejudice that they identified was that we didn't get the dismissal we wanted. The $11,000 or thereabout, that was the measure of their cost for showing up for trial. Isn't that right? Isn't that where that number came from? Yes. Okay. Well, thank you. Let's hear from, let's hear from Mr. Casta. May it please the Court. Infinity asks that this Court affirm the District Court's judgment because it conducted the, the District Court conducted the necessary claim construction and instructed the jury properly. It also did not abuse its discretion when involving the sanctions that the Court was just discussing. Let's get to Cinch. Here, the specification gives clear language about guidance on what Cinch is. And it states, additionally, Cinch and Nozzle do not directly contact the user when bathing with the device as it may be abrasive or uncomfortable to the user. This statement in the specification is not regarding a particular embodiment. It is applicable to the… Is there anything else in terms of the intrinsic record that you would say supports the District Court's claim construction on Cinch, besides the part you just pointed us to? Yes, Your Honor. We think that there's at least four or five other things in the intrinsic record. One is that when using that language about no contact, the language states that when using, or excuse me, it does not directly contact the user when bathing with the device. And in that discussion, it uses device 10, which is the entire device. The District Court picked up on that because that means that it's not as far as a specific embodiment. Is it device 10? Why isn't device 10 an embodiment? I mean, isn't… Device 10, as I understand, is the device itself, Your Honor. So somebody's figure, their main figure, has to be the only thing that they can, you know, when someone has a figure and a patent, that is what the invention is? It can't be anything broader than that? Don't the claims, the plain language of the claims, define what the invention is? They do, Your Honor. Is this requirement for the Cinch expressly claimed? Is it in the claims? No, it is not in the claims. But it is, Your Honor, in what we had just talked about in the specification. In addition to that… Is this the only sentence that describes the word Cinch in which the word embodiment or may is not included? That I don't know without looking, but I don't recall that there is another one. But if you look at, for example, you know, this discussion is supposed to be as part of an embodiment in figure 4. But if you look once again, Your Honor, at this no contact requirement, it once again not only uses device 10 generally, but there is no reference in figure 4 to device 10. It's not, at that point, you're no longer talking about figure 4. You're talking about the device generally. And in addition… Just to make sure I step back on my question, it sounds like you're still talking to us about that one portion of the specification, right? You're not pointing me to other parts in terms of record? There actually are, Your Honor, other parts. But I haven't, yes, let me get to those right now and answer your question. For example, there is a discussion about that the cinch can be made of metal. And if it's going to be made of metal, and this is just one embodiment, I will admit, but if it's going to be made of metal that is exposed and it can contact very sensitive parts of the skin of a male, female, or infant body, it's not going to provide a comfortable experience. The problem with that, the problem with this argument that I'm having is I don't think the claim requires a metal cinch. It does not require it, but it can be one embodiment of it. But it's hard. What if it's not metal? What if it's not, what if the cinch, because the claim doesn't say what the cinch is made of, what if it's not a material that would be hard on the body? And we're supposed to still read in because there's one sentence in the specification that says that you want to have the hand not directly contact it, that we're supposed to read that into the claim? We think so, Your Honor. We think that if it can be metal, then it shouldn't be contacting the skin. It is also, Your Honor, there's discussions in here about how the pleats What if it's not metal? What if it's an embodiment in which it's not metal? Well, it could still be of another hard material that would be abrasive to the skin, Your Honor. In addition, there's discussion within the specification that the pleats cover the cinch. What is your best case to say that we need to read in this portion of the specification that you've been talking to all of us about into the claims? The best case? Yes, please. I think there's a discussion in the Thorner case that's been cited, and it specifically says that a feature can be outside the reach of the patent's claims, even though the language of the claims itself, read without reference to the specification, might be considered broad enough to encompass that feature. And so we think that there is an express disavowal in this matter when it talks about no contact by the user. Did you argue an express disavowal below to the district court? I don't remember that we used the term express disavowal, but we did talk about how these particular portions of the specification under Vitronics and Phillips inform what the claims are in this matter. Express disavowal is a pretty hard standard to satisfy. Why do you think you satisfy that here? Your Honor, we think that the plain language, cinch does not directly contact the user when bathing with the device, as it may be abrasive or otherwise uncomfortable to the user, meets that language. And in addition, the specification criticizes and disparages the prior art for providing an uncomfortable experience to the user. For example, column one lines 32 through 36 of the patent talk about how there were specific concerns that soap dispensers and the prior art may scratch the user during such use. In the case with Sorrell that the district court erred with respect to the claim constructions, do you agree that that was a least prejudicial error? Could you repeat the question, Your Honor? Sure. If we agree with your opposing counsel that there was an error with respect to the claim constructions here, do you agree that that error would be prejudicial? We would not agree with that, Your Honor. Why not? As to the claim construction regarding figurative handle, we think that there's other evidence on figurative handle that would not require, that would not be prejudicial error and not require a new trial. For example, there was discussion there about how the ploy, the plush toy is essentially not suitable or capable because it turns soft when it was wet and it was not rigid. Isn't that a fair question for the fact finder? You're saying whether that, you're saying you have evidence that would show even under a broader construction that the accused device doesn't have a figurative handle, right? Because it would get wet. But isn't that for the jury to decide, that factual question? Well, I think the answer is yes, generally. But here when we're looking at it from this standpoint, if there is evidence that supports what would be, if the court decided a correct claim of construction. It's only if that evidence is undisputed, right? I don't think it would necessarily have to be undisputed. I think it just has to be overwhelming, as I recall. I don't think so. Isn't what happened here, you got a construction that implied intent was necessary on a figurative handle term. You litigated the case and told the jury they had to find intent. And you said the evidence doesn't show intent. Not even sure that that was in dispute. If we were to now say that the proper construction does not require an intent, isn't there at least some likelihood the verdict would have been different and therefore we'd have to send it back? Your Honor, we think that the intent that's at issue here is different. We don't think that this is an intent to infringe that's at issue. We think this is a definitional intent about what a particular item is. I get that, but let's say, just for the sake of argument, that we think that that was an incorrect construction and you shouldn't have been allowed to make that argument to the jury. Isn't that a prejudicial error? I know you don't concede it's an error, but if we were to find it's an error, how is it not prejudicial? I think it's, not to repeat myself, but I think going back to the evidence as far as that it's not a capable item that can be a handle, talking about the plush toy when it gets wet, for example. I think that's the evidence that would be towards that. In talking about the intent... Do you at least concede, though, that there would have been prejudicial error with respect to the... If we find that the court erred below with respect to the such construction, would you concede that that would then be some type of prejudicial error here? I think that we probably would, Your Honor. Okay. As to the different definitions that Sorrell proposed as to the figure to handle, they ask that it be able to be grasped by the hand. They ask that it be capable of being grasped by the hand. They ask that it be suitable of being grasped by the hand. But there's lots of items, common items, frankly, that just because they are able, suitable, or capable of being grasped by the hand, that they are not or do not have handles.  Those are capable or suitable of being grasped by the hand. They do not have a handle. Similarly, a cell phone, for example, is indeed made to be grasped by the hand, but it doesn't have a handle. And so we think that the handle, when that is mentioned, is designed to be grasped by the hand, and that's what the district court's construction order was getting at. I'd like to, if you don't mind, talk about the sanctions issue. Am I correct that it was undisputed in the district court that your side got the assignment documents from the other side approximately 30 days before trial? That is correct, Your Honor. So is it clearly erroneous, the various statements that we see in the record, where the district court seems to be finding that you only got them roughly three days before trial? I think, as Your Honor had mentioned in the prior questioning, that, yes, I think there was a mix-up in the order, because in one of the orders he does say three days, but both orally, and this is at Appendix 1032, and in a written order, I believe it's on the motion to dismiss, Appendix 1476, he says that it's about a month before trial. So the trial judge was aware that we had had them about 30 days before trial. That's correct. Sorry. There seems to be a difference. He seems to make different findings at different times, and I get that. It's hard to be 100% correct all the time. Nobody can do that. But why should we not say that, in this context, that was clear error, and therefore the sanctions based on that are an abuse of discretion? I think because leading up to trial, Your Honor, that evidence had been excluded, and my client had relied on that exclusion up until the day before trial, when then, on the morning of trial, the judge decided to continue the case. At that point, our attorneys and everybody else had already traveled to the trial. That all goes to the prejudice. But my question, I think, is if the order is based on a clear error of fact, i.e. when you got the documents, why is that not an abuse of discretion, even if you were prejudiced? I think the answer is that I think that even though the order says three days, the judge was well aware that it was actually 30 days, and, in fact, in another written order had recognized it was 30 days. So it's not really clear error, you would say? That's correct, Your Honor. Your Honor, we would ask that the judgment be affirmed, both as to construction of cinch, the construction of figure to handle, and that there was no abuse of discretion as to sanctions. Thank you, Mr. Kasten. Thank you very much. Mr. Parsons? I'm going to give you another minute. Thank you, Your Honor. I just want to pick up on something that Judge Cunningham asked about prejudice. There was sufficient evidence in the record regarding whether or not the toy that was in the pouf. I questioned Mr. Sorrell, and this is on pages 27, 28, and 29 of our brief. I said, can you grab the character? He was on the stand. Okay, are you holding the character? All right. So you're holding onto the ball or the character. I'm holding onto the character. Is your hand touching the cinch? No, sir. Does the character come out easily? No, not easily. Mr. Sorrell may have already covered this, but just out of pure paranoia, is the character on the defendant's product, is it suitable to grab? Yes. All right. Is it secure? Yes, sir. Is it your opinion that it sticks out far enough for someone to grab it? Yes. So Mr. Sorrell is on the stand handling this. I questioned the amenities representative. I said, Mr. Keller, I said, all right, can I use this as a handle grabbing the plush toy if I was bathing? If you say so. Am I using it as a handle now? Sure. So I can use it as a handle? Sure. So there was evidence in the record that if our construction had adopted, the jury could have returned the vote in my favor. Okay. Thank you very much. Thank you. Thank you. We thank both counsel for your argument today, and the case will be under submission. We are adjourned for today.